place of inspection is not very important. The reasonable convenience of the defendant should be considered in fixing the date for the inspection, and the time for making it should be limited.

---

### FRANCE MILLING CO. v. FIRST NAT. BANK OF COBLESKILL.

(Supreme Court, Appellate Division, Third Department. May 4, 1910.)

BANKS AND BANKING (§ 154*)—DEPOSITS—ACTIONS BY DEPOSITORS—SUFFI-
CIENCY OF EVIDENCE—OWNERSHIP OF DEPOSIT.

     In an action against a bank for damages for refusal to pay checks drawn by plaintiff when there was sufficient money to pay them on deposit in plaintiff's name, evidence *held* to show that such money at the time the checks were drawn belonged to another as trustee for plaintiff and its creditors, and not to plaintiff.

     [Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 154.*]

     Houghton, J., dissenting.

Appeal from Trial Term, Schoharie County.

Action by the France Milling Company against the First National Bank of Cobleskill, N. Y. From a judgment for plaintiff and an order denying a motion for new trial, defendant appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

Charles H. Holmes (Charles E. Nichols, of counsel), for appellant. Henry V. Borst, for respondent.

COCHRANE, J. The judgment awards the plaintiff $4,200 damages for a refusal by the defendant to pay certain checks drawn by the plaintiff and presented to the defendant bank for payment in July, 1908. At the time of such presentation, the bank had on deposit in the name of the plaintiff sufficient money for the payment of such checks. The defense is that, although the money was deposited in the name of the plaintiff, it in fact belonged to De Witt C. Dow, as trustee for the plaintiff and its creditors.

Plaintiff was incorporated in the year 1902. Its principal stockholders were Clifford France and Stanton France, brothers. Its business consisted in buying buckwheat, grinding and manufacturing it into flour, packing the flour in cartons containing the name of the plaintiff corporation and receipts for making different kinds of food with the flour, and in this way selling the same. Plaintiff kept an account with the defendant bank in the name of "C. France & Brother." In 1904 it became insolvent. It owed the bank $10,000, George H. Dunstan of Buffalo $1,300, and various other creditors about $1,500, besides a mortgage of $5,000 on its real estate in Cobleskill, where its business was conducted. Dunstan went to Cobleskill to press his claim, and an interview took place at the bank between himself, Dow, who was at that time cashier of the bank, and Clifford France. The parties to this interview agree that they all recognized the precarious

financial condition of the plaintiff, the desirability from the standpoint of debtor and creditors alike of a continuation of its business, and to that end the necessity of financial aid in the future by the bank. There is a disagreement, however, as to the plan agreed upon for accomplishing such a result. France says it was agreed that, if the plaintiff would employ Mr. Simmons as bookkeeper and to represent the bank, the bank would continue to furnish the money to carry on the business, and the creditors should be paid pro rata out of the profits; that Mr. Dow was to have merely supervision over the business, and was to act in an advisory capacity, but that the business was not to be turned over to him. Dow, on the contrary, testified that the business was to be turned over to him, and that he was to have full control and charge thereof; that the stock on hand was to be inventoried, and that he was to pay plaintiff therefor; that he was to assume full responsibility for losses that might occur; that the profits were to be divided pro rata among the creditors, and, if there was anything left, it was to be turned over to the plaintiff; that Simmons was to be employed to look after the business; and that the France brothers were also to be employed in other capacities. Dunstan gives substantially the same version of the conversation as Dow.

The jury were instructed to determine what arrangement was made at the conference between these three persons, and were substantially told that, if the arrangement was as claimed by France, plaintiff should recover. Under the charge of the learned trial justice, the recovery by the plaintiff rests on the fact that the arrangement between France and Dow made at the bank detailed by them and Dunstan was, as testified to by France, that Dow was to act simply in an advisory capacity, and not in any sense as proprietor of the business. There are a number of circumstances and incidents which bear more or less directly on the question of fact which was submitted to the jury. Many of the circumstances relied on by plaintiff lose their significance when it is considered that there is no claim by defendant that Dow had an absolute ownership of the business, but that he was conducting the business in reality for the benefit of plaintiff, and that the plaintiff had a reversionary interest therein, and was to be the sole beneficiary thereof after payment of its debts and expenses.

As I view the case, however, the actual transaction between the parties was of such a controlling and conclusive character as to render unnecessary consideration of the various details subsequent thereto. The conversation at the bank took place in July or August, 1904. In the latter month Simmons became identified with the business which had formerly been conducted by the plaintiff. At the request of Dow and on his promise of indemnity, Simmons gave to the defendant bank his promissory note, which was discounted, and the avails thereof were credited to a new account then opened in the bank by Dow under the name of "France Milling Company"; the plaintiff having theretofore kept its account with the defendant in the name of "C. France & Brother." Other notes of Simmons were subsequently from time to time discounted, and the proceeds thereof, together with all receipts from the business, were credited to this new account down to July,

122 N.Y.S.—47

1908, when the plaintiff attempted to exhaust the account by the checks, the refusal to pay which by the bank constitutes the grievance of the plaintiff. According to a rule of the bank, a signature card was deposited in connection with this account reading as follows: "Mr. W. W. Simmons will sign France Milling Co." All checks received in the business were thereafter indorsed by Simmons, and substantially all checks drawn against the account were signed by him, the few exceptions relating exclusively to matters pertaining to the business. The France brothers thereafter received a weekly compensation paid them by checks drawn by Simmons. Immediately on entering this new arrangement an inventory was taken of all the plaintiff's available stock on hand, including the office furniture and implements used in its business. This inventory amounted to $2,205.97. For this amount a check was drawn September 10, 1904, against the funds raised by Dow as aforesaid on the Simmons notes, which check was payable to "C. France & Brother," and was deposited to the credit of this latter account and the amount thereof was subsequently withdrawn by plaintiff. The only personal property not included in such inventory consisted of a quantity of buckwheat which was held as collateral to the indebtedness of plaintiff to the bank. It thus appears that plaintiff sold to Dow for full value its entire stock of goods and office furniture and implements. It also appears that the insurance on the personal property standing in the name of the plaintiff was changed.

Three facts are thus fully established: First, that the plaintiff divested itself of its title to its stock on hand and personal property used in its business; second, that Dow furnished the money to pay plaintiff therefor; third, that a new account was instituted with the bank consisting of money raised by Dow and the proceeds of the business subsequently conducted. It is true that the account in the bank was kept in the name of plaintiff, but there was nevertheless a change in the form of that account which was intended to serve some purpose, and no purpose is suggested by reason of such change unless it be to indicate a change in ownership. It was more expedient that the business should be conducted in the name of plaintiff for the reason that an apparent change might have tended to disrupt and disorganize the business and injure its standing with the plaintiff's customers, and for the further reason that more than $1,500 worth of the property conveyed by plaintiff consisted of the cartons bearing its name, and to abandon that name would have involved also an abandonment of that property. The facts are just as significant as if the plaintiff had executed a bill of sale of the property, and it seems to me they leave no room for controversy. What the parties did is more significant than what they said. The latter must yield to the former. If their actions and words are inconsistent, their actions speak with louder emphasis.

Assuming for the argument that, as the jury has found, it was agreed in July or August that Dow should act only as an advisor and friend of plaintiff, it nevertheless appears that in September he purchased the plaintiff's business for full value, and thereafter conducted it himself. I think it clearly appears, therefore, that Dow as trustee was the owner of the money deposited in the bank, and that the right of plaintiff to draw checks thereon was no greater or different than

such right would have been if Dow had kept the bank account of his individual name as such trustee. The fact that he used the name of plaintiff, instead of his own name, was for the greater good and benefit of the plaintiff, and loses its significance in the light of uncontroverted facts.

At the time of the refusal by the bank to pay plaintiff's checks against this account, it is undisputed that the creditors of plaintiff had not been paid in full, and Dow was making a claim for his services as trustee. As to the propriety of such latter claim, we do not decide, nor as to the equities between Dow and plaintiff. This action against the bank is sufficiently defended when it appears that plaintiff had no title to the funds it attempted to withdraw.

The judgment and order must be reversed and a new trial granted, with costs to the appellant to abide the event. All concur, except HOUGHTON, J., who dissents.